## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LESLEY MARGARET DEL GRIPPO,

                          2:16-CV-08625-HBF

          Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant

**APPEARANCES:**

JAMES LANGTON
LANGTON & ALTER, ESQS
1600 ST. GEORGES AVENUE
P.O. BOX 1798
RAHWAY, NJ 07065
    On behalf of Plaintiff

ERICA MARIE ADAMS
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
P.O. BOX 41777
PHILADELPHIA, PA 19101
    On behalf of Defendant

**FITZSIMMONS,** Magistrate Judge

## OPINION

Plaintiff Lesley Margaret Del Grippo brings this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g), seeking review of a final decision of the Acting Commissioner of Social Security who denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §401 et seq.

("the Act"). Plaintiff has moved to reverse the case and/or remand for a rehearing. The Commissioner has moved to affirm.

For the reasons that follow, the Commissioner's decision is affirmed.

## I. ADMINISTRATIVE PROCEEDINGS

On September 11, 2012, Ms. Del Grippo filed a Title XVI application for SSI with an alleged onset date of January 6, 2012, alleging disability due to "seizure disorder, anxiety disorder and possible hepatitis C."[1] [Certified Transcript of the Record, Compiled on January 6, 2017, Doc. #9 (hereinafter "Tr.") 15, 86]. Her SSI claim was denied initially on February 26, 2013, and upon reconsideration on August 29, 2013. [Tr. 86-100, 101-115].

On March 12, 2015, Administrative Law Judge ("ALJ") Sheila Walters held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 39-78]. Vocational Expert ("VE") Amy Peiser Leopold also testified at the hearing. [Tr. 65-77, 215]. On May 18, 2015, ALJ Walters found that plaintiff was not disabled, and denied her claim. [Tr. 12-29]. Plaintiff filed a timely request for review of the hearing decision on

---

[1] Plaintiff's application for Social Security Disability Insurance Benefits was denied in 2006. [Tr. 209].

2

July 23, 2015. [Tr. 7-11]. On September 19, 2016, the Appeals
Council denied review, thereby rendering ALJ West's decision
the final decision of the Commissioner. [Tr. 1-6]. The case is
now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this
action for review and moves to reverse and/or remand the
Commissioner's decision.

## II.   STANDARD OF REVIEW

The standard of review for this Court is whether the
ALJ's decision is based on substantial evidence in the record
as a whole. 42 U.S.C. §405(g). Substantial evidence is
evidence that a reasonable mind would accept as adequate to
support a conclusion; it is more than a "mere scintilla."
Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting
Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
"Overall, the substantial evidence standard is a deferential
standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d
Cir. 2004); see Woody v. Sec'y of Health & Human Servs., 859
F.2d 1156, 1159 (3d Cir. 1988). "Further, even if the
Secretary's factual findings are supported by substantial
evidence, this court may review whether the administrative

determination was made upon correct legal standards." <u>Curtin v. Harris</u>, 793 (D.N.J. 1981).

A reviewing court "must consider the (1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed him; and (4) plaintiff's age, educational background and work history." <u>Id.</u>, 508 F. Supp. at 793. It "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981); <u>see</u> <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 121 (3d Cir. 2000)("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.")(citing <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d. Cir. 1999)). "In the absence of such an indication the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." <u>Id.</u>

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. The scope of review is limited to determining whether the

4

Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the circuit court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence); Plummer, 186 F.3d at 427. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)("We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently."); Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986)("While there is other evidence in the record that could support a finding of disability based on pain, our inquiry is not whether the ALJ could have reasonably made a different finding based on this record. Rather, we must review whether the ALJ's actual findings are supported by substantial record evidence.").

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Ms. Del Grippo must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limits your physical or mental ability to do basic work activities" to be considered "severe").[2]

---

[2] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

6

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4); 20 C.F.R. §416.920(a)(4). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4)(i-v); 20 C.F.R. §416.920(a)(4)(i-v).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); 20 C.F.R. §404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record."); see also 20 C.F.R. §416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments,

7

including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

The disability determination involves shifting burdens of proof. "The claimant bears the burden of proof for steps one, two, and four of this test." Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987)). Neither party bears the burden of proof at step three. Id. 228 F.3d at 263 n.2. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); Plummer, 186 F.3d at 428654747. The ultimate burden of proving disability under the Act lies with the claimant. See 42 U.S.C. §423(d)(5)(A); 20 C.F.R. §416.912(a).

## IV. THE ALJ'S DECISION

Following the above-described five step evaluation process, ALJ Walters concluded that plaintiff was not disabled under the Social Security Act. [Tr. 12-29]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from the application date of September 11, 2012 through the date of decision. [Tr. 17].

8

At step two, the ALJ found that plaintiff had a seizure disorder, degenerative disk disease of the lumbar spine, degenerative joint disease of the left shoulder, dysthymic disorder, cyclothymic disorder, depressive disorder, anxiety disorder, and history of panic attacks that were severe impairments under the Act and regulations. Id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. [Tr. 18]. The ALJ specifically considered Listings 1.04 (disorders of the spine), 12.04 (affective disorders) and 12.06 (anxiety disorders). Id.

Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform light work as defined in 20 CFR
> 416.967(b) except she is able to lift and carry ten
> pounds frequently and twenty pounds occasionally;
> she is able to sit for about six hours of an eight
> hour workday; she is able to stand and/or walk for
> about six hours of an eight hour workday; she is
> precluded from climbing ladders, ropes and
> scaffolds; she is precluded from working around
> hazards (heights, machinery, dangerous equipment and
> so forth); she is limited to occasional overhead
> reaching; she is able to perform simple, repetitive
> tasks, she is limited to no more than occasional
> interaction with supervisors, coworkers and the
> public; and, she is precluded from work at a

9

production pace (such as sustained fast-paced
activity or work with requirements for meeting
explicit quotas, deadlines, or schedules), but work
at a normal production pace is not rule out.

[Tr. 19].

At step four, the ALJ found plaintiff was unable to
perform any past relevant work. [Tr. 23]. At step five,
after considering plaintiff's age, education, work
experience and RFC, the ALJ found that jobs existed in
significant numbers in the national economy that
plaintiff could perform. [Tr. 23-25].

## V.    DISCUSSION

On appeal, the plaintiff contends that the ALJ erred in
in two respects, arguing that:

1. The ALJ's consideration of the treating physician's
   opinion was error; and

2. Substantial evidence does not support the ALJ's RFC
   determination.

The Court will address each of plaintiff's arguments in
turn.

## A.    The ALJ Correctly Applied the Treating Physician Rule

Plaintiff contends that the ALJ erred in her application
of the treating physician rule, resulting in a residual

functional capacity that was not based on substantial evidence. She argues that the ALJ erroneously rejected a October 12, 2012, opinion from her treating physician, Dr. Mazhar El Amir, stating that she cannot work.

Pursuant to 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2), a treating source's opinion will usually be given more weight than a non-treating source. If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. Id. If the treating source's opinion is not given controlling weight, the ALJ considers the following factors in weighing the opinion: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and

11

specialized knowledge of the source. <u>See</u> 20 C.F.R.
§§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security
Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2,
1996). If the treating physician's opinion is not supported by
objective medical evidence or is inconsistent with other
substantial evidence in the record, the ALJ need not give the
opinion significant weight. <u>See</u> <u>Plummer v. Apfel</u>, 186 F.3d
422, 429 (3d Cir. 1999)("An ALJ may reject a treating
physician's opinion outright only on the basis of
contradictory medical evidence, but may afford a treating
physician's opinion more or less weight depending upon the
extent to which supporting explanations are provided." (citing
<u>Newhouse v. Heckler</u>, 753 F.2d 283, 286 (3d Cir. 1985)); <u>Cotter</u>
<u>v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981)("We are also
cognizant that when the medical testimony or conclusions are
conflicting, the ALJ is not only entitled but required to
choose between them.... [W]e need from the ALJ not only an
expression of the evidence s/he considered which supports the
result, but also some indication of the evidence which was
rejected."); <u>Adorno v. Shalala</u>, 40 F.3d 43, 48 (3d Cir. 1994)
(holding that an ALJ "may properly accept some parts of the
medical evidence and reject other parts, but she must consider

12

all the evidence and give some reason for discounting the evidence she rejects." (citing Stewart v. Sect'y of H.E.W., 714 F.2d 287, 290 (3d Cir. 1983)).

Defendant correctly points out that "Dr. El Amir did not offer a medical opinion under the regulations." [Doc. #14 at 10]. Rather, Dr. El Amir completed a State of New Jersey Division of Family Development Welfare Examination Report, checking a box that plaintiff could not perform full-time work. [Tr. 295-97]. The first page of this document is a form cover letter from the County of Hudson, Department of Family Services, Division of Welfare, explaining that the "above named individual" is requesting a "medical deferral from the work participation requirement of the Work First New Jersey (WFNJ) program due to a disability/illness" with instructions on the completion of the form. [Tr. 295]. Page two, entitled "Examination Report," requests the name of the physician and diagnoses. Under primary diagnosis, Dr. El Amir wrote in "seizure disorder" and, under psychiatric/psychological disability, the doctor checked off "anxiety disorder." [Tr. 296]. Page 3, section D, entitled "Employment Evaluation", consists of three questions followed by check-off boxes of "yes" and "no." The questions are: 1. "Can the person work? Is

13

the person ambulatory? (If there are work limitations, check below, and specify degree of limitation)"; 2. "Is this individual recommended to participate in a substance abuse program?"; and "Do you think this person is a likely candidate for Supplemental Security Income?" Dr. El Amir checked "no" that plaintiff could not work, checked "yes" that she was ambulatory, and he indicated she had "work limitations" by checking the boxes for standing, walking and climbing but did not indicate the degree of limitation. [Tr. 297]. He did not recommend participation in a substance abuse program. Finally, he checked "yes" that plaintiff was a "likely candidate for Supplemental Security Income." [Tr. 297].

The doctor's conclusion that plaintiff is unable to work is not a medical opinion under the regulations but, instead is an issue reserved to the Commissioner, and therefore is not entitled to any special significance. See 20 C.F.R. §416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work"

14

does not mean that we will determine that you are disabled."). "While a treating physician's opinion is certainly evidence of a patient's ability to work, it is neither conclusive nor binding on the ALJ." Prokopick v. Comm'r of Soc. Sec., 272 F. App'x 196, 199 (3d Cir. 2008).

Importantly, Dr. El Amir completed this form for the State of New Jersey after seeing plaintiff on only two occasions. [Tr. 304-06 (9/19/12 initial evaluation); Tr. 301-03 (follow-up evaluation of seizures, "presents for paper fill-out")]. The doctor's treatment records preceding the completion of the Examination Report reveal no remarkable medical findings or functional limitations. Dr. El Amir noted that plaintiff was in "no apparent distress...with good attention to hygiene and body habitus. Oriented to person, place and time. Mood and affect normal, appropriate to the situation[]",no abnormalities noted to "gait or station", "coordination [wa]s good", "deep tendon reflexes [we]re normal" and plaintiff "was instructed to follow her current medical plan." [Tr. 301-02; 304-05; see Tr. 299 (11/6/12 treatment note "Patient was instructed to follow her current medical plan.")]. No changes to treatment or medications were made.

15

Defendant correctly points out that in utilizing check-off boxes, Dr. El Amir "did not specify the degree of limitation making it of no practical value in assessing Plaintiff's functional capacity because it said nothing about the extent or degree of Plaintiff's capabilities or limitation." [Doc. #14 at 10-11 (citing Tr. 297)]. "[C]hecklist forms such as [Dr. El Amir's examination] report, which require only that the completing physician 'check a box or fill in a blank,' rather than provide a substantive basis for the conclusions stated, are considered 'weak evidence at best' in the context of a disability analysis." Smith v. Astrue, 359 F. App'x 313, 316 (3d Cir. 2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993); Prokopick, 272 F. App'x  at 199 ("the ALJ was entitled to accord lesser weight to [the doctor's] opinion because it was provided in a check-box form and he did not provide any reasons in support of his various conclusions."); Drejka v. Comm'r of Soc. Sec., 61 F. App'x 778, 782 (3d Cir. 2003)("The ALJ was entitled to review the record in totality and to discount the treating physician's opinion...[claimant's] treating physician made the determination that she was disabled only in a form report. We have characterized such a form report, in which the

16

physician's only obligation was to fill in blanks, as "'weak evidence at best.'")(quoting Mason, 994 at 1065).

Defendant argues, and the Court agrees, that the ALJ appropriately considered the nature of the Medical Source Statement form requiring the doctor to check-off or circle a claimant's limitations.

Substantial evidence supports the ALJ's finding that plaintiff's subjective complaints are disproportionate to the objective medical evidence. [Tr. 20]. In evaluating the medical evidence, and specifically Dr. El Amir's treatment records, the ALJ found that,

> While the claimant has shown diligence in seeking medical care, her treatment is very routine. Evidence received two months after the hearing reveals that the claimant continued treatment with Dr. [El Amir] throughout 2013, 2014, 2015, with continued, very routine treatment with medications for diagnoses of seizures, pain, asthma, arthritis, GERD and anxiety (Exhibits 8F, 9F, 10F). Very few objective tests were ordered, including: A December 2013 EGD that found evidence of gastritis and esophagitis (Exhibit 9F, p. 47); and a July 2014 venous Doppler ultrasound that found no evidence of DVT about the knee bilaterally, and a left [B]aker cyst (Exhibit 9F, p. 40). A July 2014 note that states that claimant has not had any visits to the Emergency Room in the past year (Exhibit 8F, p. 32). The undersigned notes that the claimant received no specific treatment for the Baker's cyst, and that the residual functional capacity herein includes any restrictions that said diagnosis would impose.

[Tr. 23].

17

Indeed, the ALJ demonstrated that he carefully considered
Dr. El Amir's treatment records. [Tr. 20-23 (noting treatment
records beginning in September 2012 through 2015)(citing
Exhibits 2F, 4F, 8F, 9F and 10F)]. Plaintiff continued to
treat with Dr. El Amir for refills of medications, but Dr. El
Amir found no neurological defects; plaintiff's
musculoskeletal examination was without abnormalities and
unremarkable; plaintiff was oriented to person, place and
time; mood and affect were normal and appropriate, and overall
treatment was routine. [Tr. 298-300 (11/6/12); 301-03
(10/10/12), 304-06 (9/19/12); 320-22 (5/15/13); 323-25
(5/1/13); 326-28 (4/20/13); 329-31 (4/5/13); 332-34 (3/22/13);
335-37 (2/19/13); 338-40 (1/18/13); 378-81 (3/4/15); 383-85
(2/3/15); 386-89 (1/2/15); 390-93 (12/1/14); 394-96 (11/1/14);
397-400 (10/1/14); 401-04 (9/9/14); 405-07 (7/29/14); 408-12
(7/3/14); 413-16 (6/28/14); 417-20 (5/29/14); 421-24
(4/28/14); 425-28 (3/3/14); 430-34 (2/25/14); 435-39
(2/12/14); 440-43 (1/28/14); 444-45 (12/12/13); 446-47
(11/21/13); 449-50 (1/18/14); 451-52 (1/7/14); 453-54
(12/26/13); 456-58 (11/9/13); 459-61 (10/4/13); 463-65
(9/10/13); 466-68 (8/26/13); 469-71 (8/6/13); 472-75
(7/16/13); 476-78 (7/2/13); 479-81 (6/24/13); 482-84

(6/18/13); 485-87 (6/10/13); 488-90 (6/4/13); 491-93 (491-93);
494-96 (5/1/13); 497-99 (4/20/13); 500-02 (4/5/13). Diagnostic
testing was reviewed and noted by the ALJ. [Tr. 20, 319
(October 2012 brain MRI was negative); Tr. 21, 317 (March 2013
MRI of the lumbar spine showing shallow scoliosis of lumbar
spine; L5-S1 small central disc herniation; L4-L5 mild disc
bulging); Tr. 21, 318 (MRI of her left shoulder showing no
evidence of rotator cuff tear, AC joint showed mild
hypertrophy and arthritic change)]. There were no referrals to
specialists.

    To the extent that plaintiff contends that ALJ erred for
failing to assign weight to the opinion contained in Dr. El
Amir's October 2012 Examination Report, the Court finds no
error. As set forth above, the State of New Jersey form is not
a treating physician opinion, but rather a state agency check-
off form that does not assign specific limitations or
abilities. Moreover, it was completed by Dr. El Amir after
only two appointments. The form was clearly considered by the
ALJ. [Tr. 20]. Further, the ALJ conducted a comprehensive
review of the medical evidence, Dr. El Amir's treatment
records, diagnostic imaging, psychiatric consultative
evaluations and the findings by the DDS physicians. [Tr. 20-

23]; see Clutter v. Comm'r Soc. Sec., 628 F. App'x 155, 157 (3d Cir. 2016) (holding the ALJ's failure to explain what weight, if any, she accorded to a treating source opinion did not warrant remand where the ALJ clearly considered the opinion and discussed the evidence relied on in assessing the RFC sufficient to permit meaningful review); Zulinski v. Astrue, 538 F. Supp. 2d 740, 751-52 (D. Del. 2008)(finding not a "medical opinion" where the doctor's medical statement was only two paragraphs, provided only a general list of plaintiff's ailments, did not describe practical limitations and stated only a legal conclusion on disability properly left to the Commissioner. "Though the ALJ was remiss in not specifically iterating that she rejected [the doctor's] opinion; the court assigns no error.").

Accordingly, the Court finds that the ALJ's findings were not error and were supported by substantial evidence.

**B.   Substantial evidence supports the ALJ's RFC determination.**

Plaintiff next argues that "the exertional and non-exertional RFCs are unexplained in the decision and are based solely on the ALJ's lay speculations. [Doc. #13 at 20-30]. The Court construes this as an argument that the ALJ's RFC is not supported by substantial evidence.

20

"Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001)(quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)(internal quotation marks omitted)); see also 20 C.F.R. §404.1545(a). In this case, the ALJ determined that plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except she is able to lift and carry ten pounds frequently and twenty pounds occasionally; she is able to sit for about six hours of an eight hour workday; she is able to stand and/or walk for about six hours of an eight hour workday; she is precluded from climbing ladders, ropes and scaffolds; she is precluded from working around hazards (heights, machinery, dangerous equipment and so forth); she is limited to occasional overhead reaching; she is able to perform simple, repetitive tasks, she is limited to no more than occasional interaction with supervisors, coworkers and the public; and, she is precluded from work at a production pace (such as sustained fast-paced activity or work with requirements for meeting explicit quotas, deadlines, or schedules), but work at a normal production pace is not rule out.

[Tr. 19].

Despite plaintiff's arguments to the contrary, the ALJ's RFC determination is supported by substantial evidence of record.

The ALJ conducted a detailed review of the relevant evidence of record, including plaintiff's testimony,

diagnostic testing, psychiatric consultative examiner's reports, treatment notes from plaintiff's medical providers, and the findings by the State Agency physicians. [Tr. 20-23]. With regard to activities of daily living, plaintiff testified that she lived alone, walked a half hour to the hearing, prepares meals, was capable of taking public transportation, does laundry and housework, can lift 20-30 pounds. [Tr. 38-65]. In a Function Report and Third Party Function Report, completed by plaintiff and her boyfriend respectively, they reported that plaintiff spends a lot of time with her boyfriend, took care of personal needs and grooming, needed no help or reminders to take medication, prepared simple meals, cleaned and did laundry a couple of hours a week, goes out daily, walks, rides in a car, or uses public transportation, food shops, is able to handle money, hobbies and interests include reading and watching television,  and can walk about 20 to 30 minutes before resting for about 5 to 10 minutes, can pay attention most of the time and follow written and spoken instructions, gets along with authority figures. [Tr. 226-33; 265-72]. As set forth above, the ALJ specifically considered the treatment records of Dr. El Amir concluding that although plaintiff was diligent in seeking medical care, her treatment

was very routine. [Tr. 20-23]. Dr. El Amir did not refer
plaintiff to any specialists. Diagnostic testing was reviewed
and properly considered by the ALJ. [Tr. 20, 319 (October 2012
brain MRI was negative); Tr. 21, 317 (March 2013 MRI of the
lumbar spine showing shallow scoliosis of lumbar spine; L5-S1
small central disc herniation; L4-L5 mild disc bulging); Tr.
21, 318 (MRI of her left shoulder showing no evidence of
rotator cuff tear, AC joint showed mild hypertrophy and
arthritic change)].

     The ALJ also accounted for mental limitations in her RFC
assessment. [Tr. 19-23]. The ALJ specifically considered the
consultative evaluations by Dr. Perdomo and Arrington in
detail. [Tr. 21, 313-15 (setting forth findings contained in
Dr. Perdomo's consultative report); 22, 355-57 (assigning
"considerable weight" to Dr. Arrington's consultative report
and medical source statement and reciting findings contained
in the report). The ALJ also considered the DDS psychological
consultant opinions, the brief outpatient treatment in October
2014, plaintiff's "wide range" of activities of daily living
and the "lack of regular psychiatric treatment." [Tr. 23].
Plaintiff points to no objective medical evidence that she
contends was overlooked by the ALJ in making the RFC

determination.

Further, the ALJ properly noted that both State Agency physicians Drs. Simpkins and Shaninian found that plaintiff had no exertional or postural limitations; however, giving plaintiff the benefit of the doubt for her back and left shoulder degenerative changes, the ALJ limited plaintiff to light work with "occasional overhead reaching" and gave plaintiff "standard seizure precautions and some mental limitations consistent with their findings." [Tr. 19, 23, 94-95, 108-10].

Thus, for the reasons stated, the Court finds no error in the ALJ's RFC assessment, which is supported by substantial evidence of record.

### C.   Substantial evidence supports the ALJ's Step Five determination.

Finally, plaintiff contends that the ALJ's hypothetical questions based on the RFC to the Vocational Expert was error. [Doc. #13 at 25-30]. Plaintiff's argument is essentially a rehashing of the earlier allegations that the ALJ did not properly determine plaintiff's RFC.[3] For the reasons set forth

---

[3]

> [O]bjections to the adequacy of hypothetical questions posed to a vocational expert often boil

above, the ALJ properly weighed all the evidence and determined an RFC that was supported by substantial evidence of record.

Substantial evidence supports the ALJ's determination that the plaintiff is able to perform a significant number of jobs in the national economy. As discussed, the ALJ properly weighed the medical evidence at issue, and her RFC and credibility findings are supported by substantial evidence of record. As to whether there are jobs that the plaintiff can perform, the VE testified that given the RFC determined by the ALJ, the plaintiff would be able to perform occupations such as mail clerk, office helper and photo copier. [Tr. 24, 68]. The VE testified that these jobs existed in significant

---

down to attacks on the RFC assessment itself. That is, a claimant can frame a challenge to an ALJ's reliance on vocational expert testimony at step 5 in one of two ways: (1) that the testimony cannot be relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert. Challenges of the latter variety (like Rutherford's here) are really best understood as challenges to the RFC assessment itself.

Rutherford v. Barnhart, 399 F.3d 546, 554 n.8 (3d Cir. 2005).

numbers in the local and national economy. [Tr. 68]. As the testimony of the VE is consistent with the findings of the ALJ and the evidence in the record, there is substantial evidence supporting the ALJ's determination that the plaintiff can perform a significant number of jobs that exist in the national economy. Accordingly, this argument is without merit. See, e.g., Plummer, 186 F.3d at 431 ("The vocational expert's testimony was in response to a hypothetical that fairly set forth every credible limitation established by the physical evidence. As such, it can be relied upon as substantial evidence supporting the ALJ's conclusion that Plummer is not totally disabled.")(citation omitted).

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's capabilities; it is to review the ALJ's decision for any reversible error. Whether there is substantial evidence supporting the plaintiff's view is not the question here.

Accordingly, the Court finds no error in the ALJ's reliance on the vocational expert's testimony in support of her determination at step five.

## VI.  CONCLUSION

For the reasons stated, the decision of the Commissioner is therefore **AFFIRMED** and the Clerk is directed to enter judgment in favor of the defendant and close this case.

An accompanying Order will issue.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #16] on April 25, 2018, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO ORDERED this 31st day of July 2018.

                                    /s/
                        _____
                        HOLLY B. FITZSIMMONS
                        UNITED STATES MAGISTRATE JUDGE